**Decided July 31, 1987**

JOSE T. TAROPE, ) CIVIL ACTION NO. 86-668
 )
 Plaintiff, )
 ) ORDER DENYING MOTION
 vs. ) FOR SUMMARY JUDGMENT
 )
MARGARITA N. IGISAIAR, )
et al., )
 )
 Defendants. )
 )

This matter was heard on July 22, 1987. The plaintiff was represented by Pedro M. Atalig, Esq. Margarita N. Igisaiar, Joaquina N. Kanaki, Eliza N. Fitial, David Nekaifes, Marcelina N. Somorang, Norman Nekaifes, Manuel O. Somorang, and Mariano Nekaifes were represented by Joel Bersgma, Esq., and Olympio T. Borja was represented by Robert O'Connor, Esq.[1] The remaining named defendants (Jose Nekaifes, Jr., Estanislao I. Limes, Esteban I. Limes, Esmael I. Limes, Anthony T. Limes, Dolores T. Limes, and Nadine T. Limes) have filed no appearance though returns of service indicate that Nadine T. Limes, Dolores T. Limes, Estanslao T. Limes, Ismael I. Limes, Esteban I. Limes, Anthony T. Limes have been served and are in

_____

[1] Mr. Borja is now deceased. Mr. O'Connor filed an answer for the heirs of Olympio T. Borja by Carmen Borja, administratrix of the Estate of Olympio T. Borja.

a default status. Only Jose Nekaifes appears to be unaccounted for.

## THE MOTION

The appearing defendants have filed a motion for summary judgment pursuant to Rule 56, Com.R.Civ.Proc.[2] The plaintiff opposes the motion. All parties concede that there exists no genuine issue of fact and that the matter is ripe for summary judgment treatment. Should defendants' motion be granted, that will dispose of plaintiff's claim. Should defendants' motion be rejected, the plaintiff would proceed to obtain the relief requested in the complaint.

## THE FACTS

Fabiana Rapugao was a Carolinian who lived on the property involved in this litigation. She died intestate around 1943. The property is known as lot number 1930. At least up to the time of the events which spawned this litigation, the use and ownership of the land appeared to be pursuant to Carolinian custom. Succinctly put, this custom dictates that the lineage or family as a whole has use rights in the land. The eldest female member of the lineage is designated as a trustee or spokesperson for the lineage in matters dealing with the land. The land is inherited or passed down to successors or heirs of the family members through the matrilineal line. Thus the land is preserved for the family. Only if the family consents, can the land be sold, leased or partitioned to third parties.

---

2/
For convenience sake, the court will refer to the Igisaiar defendants as one group and the Borja heirs as the other group.

The family tree of Fabiana Rapugao is attached hereto. The plaintiff, Jose T. Tarope, Jr., attains his status as an heir by virtue of an adoption decree issued in Trust Territory High Court Case 45-73 (1976) whereby it was found that the plaintiff's father, Jose Tarope, was adopted by Fabiana Rapugao and that the plaintiff is the sole heir of his father. Thus, from the family tree it can be seen that the grandchild (plaintiff) and great grandchildren and great, great grandchildren (Igisaiar group) may lay claim to an interest in the land.

What distinguishes this case from the usual Carolinian land tenure pattern is the fact that certain members of the family deeded their interests to other members of the family and also deeded a portion of lot 1930 to Olympio T. Borja who is not of Carolinian descent but Chamorro descent. There have also been other significant transactions involving the land.

In chronological order, these transactions are:

1. On September 13, 1969, a "Special Warranty Deed" was executed which transferred a portion of lot 1930 to Olympio Borja. The transferors were Dionicio Limes the then land trustee and Jose Nekaifes.

2. . On March 15, 1970 a "Corrected Special Warranty Deed" was executed whereby Olympio Borja was deeded 141,700 square feet of lot 1930. The transferors were listed on the document as Dionicia Limes, Jose Nekaifes, Vicente Limes,

Juan Limes, and Cornelia L. Pua. Signing the document as "Witnesses" were Guadalupe Eugenio, Cornelia Pua and Jose Tarope (plaintiff). This deed appears to have corrected the description encompassed in the September, 1969 deed.

3. October 31, 1972, Dionicia L. Igisaiar, Juan A. Limes and Vicente A. Limes as "sole and legal heirs of Fabiana Rapugao" executed a "Gift and Quitclaim Deed" to Jose Angairo Nekaifes their interests in the subject property.

It is also noted that in 1956 Dionicia Limes as Trustee exchanged lot 1930 for other Government land but this exchange was nullified in another exchange of deeds in 1977. This exchange is of no import here except it supports the conclusion that Dionicia Limes was recognized as the land trustee for the heirs of Fabiana Rapugao.

4. In 1973 the plaintiff in this case filed a quiet title suit for lot 1930 as well as a determination of the heirs of Fabiana Rapugao. Tarope v Nekaifes, et al., Civil Action 45-73. The plaintiff was found to have an equal undivided interest in lot 1930. The other heirs of Fabiana Rapugao were enjoined from interfering with plaintiff's rights to the land.

5. In 1978 Jose Nekaifes quitclaimed a part of lot 1930 to his daughter and son in law. The following year, the daughter and son in law mortgaged the property to the Mariana Islands Housing Authority presumably for money to construct a house on the land.

None of the estates of any of the persons who are shown as deceased on the family tree have been probated.

## DISCUSSION

This case demonstrates the struggle of maintaining the customary Carolinian land tenure pattern in the present day economic land boom in the Northern Mariana Islands. So long as the land owned by the Carolinian families has no real or substantial market value, there is no incentive nor urge to sell or lease to others outside the family. Yet, when the land attains substantial value and the prospect of obtaining a monetary return for an interest in the land occurs, the cohesion and unity of the family can be erased and the need for the customary land tenure pattern diminishes. As pointed out by the treatises (Spoehr and Land Tenure Patterns) the Carolinian custom developed as a means to provide a method of subsistence for the immediate and future generations of the Carolinian family. The land tenure system in its purest form assures each family member a place to build a home and an area to grow crops. It also provides a method of passing down these rights to succeeding generations.

116

This case is one of first impression. Essentially the court is asked to answer the question if a Carolinian family can, by its own acts, destroy the traditional land tenure patter so that a holder of an interest in the land can demand a partition. It is concluded that the answer is in the affirmative.

The transfer of a sizable portion of lot 1930 to Mr. Borja and the subsequent consolidation of interests in the land in Jose Nekaifes clearly demonstrates an intent to terminate the traditional rights of the family. Not only did various members participate in the dismemberment, but the senior matrilineal trustee participated in the divisions.

The judgment rendered in Tarope v Nekaifes tacitly recognized that the traditional manner of holding title had been extinguished. After the consolidation of the interests in Jose Nekaifes, it appears he had a two third interest and the plaintiff a one third interest. At least this appears to be the intent and design of the various transfers and the court decision.

The court agrees with the plaintiff that it would be inequitable for the other branches of the family to deed their interests to one another yet expect the plaintiff to be bound by the traditional Carolinian land tenure system.

The defendants claim Tarope cannot maintain this partition action without a probate of the Estate of Fabiana Rapugao and then follow 8 CMC §§ 2904 and 2909. The problem with this proposition is that long before the probate code came into

effect, the Carolinian family in this case had, by its own acts, taken the land out of the traditional mold. Additionally, Tarope v Nekaifes, essentially determined the heirs and interest of Tarope. There may be creditors still to be paid and Tarope may be liable to them because a formal probate procedure was not followed but this does not alter the prior judicial determination that he has a one-third undivided interest. This is not a bar to Tarope's partition suit.

The defendants' motion for summary judgment is denied. The plaintiff shall proceed with his partition suit.

Dated at Saipan, CM, this 31st day of July, 1987.

_____
Robert A. Hefner, Chief Judge

Mrs. Fabiana Rapugao
born (b):
died (d): est 1943

---

| Maria Angairo | Joaquina Angairo | Jose Tarope |
|---|---|---|
| b. | b. | b. est 1917 |
| d. | d. est 1930's | d. est 1944 |
| | | CLAIMS ADOPTION |

---

| | | |
|---|---|---|
| 1. Vicente A. Limes | Jose A. Neikefes (JAN) | Jose T. Tarope, |
| quitclaimed int. to JAN | a/k/a Jose A. Nekaifis | Jr.++ |
| 10/31/72 | b. 1910 | b. |
| | d. 1981 | |
| 2. Donisia Limes (T/ee) | **DIED WITH 8 CHILDREN LISTED BELOW** | |
| a/k/a Donisia L. Igisomar | | |
| quitclaimed int. to JAN | | Regina Tarope |
| 10/31/72 | | (deceased) |
| 3. Jose A. Limes | | |
| **DIED WITH 5 CHILDREN LISTED BELOW** | | |
| 4. Juan A. Limes | | |
| quitclaimed int. to JAN | | |
| 10/31/72 | | |

---

| | |
|---|---|
| 1. Camila L. Pua | 1. Joaquina Kanaki*++ |
| Quitclaimed int. to | 2. David Nekaifes*++ |
| JAN 10/31/72 | 3. Eliza N. Fitial*++ |
| 2. Estanislau Limes++ | 4. Marcelina Somorang*++ |
| 3. Steven Limes++ | 5. Margarita Igisaiar*++ |
| 4. Antonio I. Limes | 6. Mariano Nekaifes*++ |
| **DIED W/ 3 children** | 7. Jose Nekaifes, Jr.++ |
| 5. Ismael Limes++ | 8. Juan Norman Nekaifes*++ |

---

1. Dolores M.T. Limes++
2. Anthony A.T. Limes++
3. Elizabeth N.T. Limes -- **MINOR UNDER 18++**

---

\* designates an Answering Defendant
++ designates a living member of the Carolinian lineage with an
 interest in Lot No. 1930